IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY DEAR,

    **Plaintiff,**

v.                                                                            1:21-cv-250 KG/KK

**SARITA NAIR, TIM KELLER,**
**and CITY OF ALBUQUERQUE,**

    **Defendant.**

## DEFENDANT'S RESPONSE TO PLAINTIFF'S VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

COME NOW Defendants Nair, Keller and City of Albuquerque, by and through their counsel, Jonlyn M. Martinez, Law Office of Jonlyn M. Martinez, LLC, and hereby respond to the Plaintiff's Verified Motion for Temporary Restraining Order and Preliminary Injunction (hereafter "Plaintiff's Motion") as follows.

**REPONSE TO INTRODUCTION**

Plaintiff Dear was formerly employed as a police officer with the Defendant City of Albuquerque. As a result of citizen complaints and allegations of excessive use of force, Plaintiff Dear was given a camera and ordered to record every citizen contact, and ordered to upload these recordings by the end of each shift. Later, an Internal Affairs investigation determined that Plaintiff Dear failed to comply with these orders and Plaintiff Dear's employment was terminated. Mr. Dear's termination has led to protracted litigation between Plaintiff Dear and the City of Albuquerque. Recently, the Plaintiff submitted an Inspection of Public Records Request to the City of Albuquerque, which sought materials protected from discovery by the work-product doctrine and attorney-client privilege. In denying this Request,

1

the City of Albuquerque informed the Plaintiff that the information sought was, among other things, attorney work-product and was protected by the attorney-client privilege. The Plaintiff then filed a lawsuit against the City of Albuquerque and its records custodian pursuant to the Inspection of Public Records Act NMSA § 14-2-1 *et seq.* (hereafter "IPRA"). The City of Albuquerque filed a counterclaim against the Plaintiff for malicious abuse of process. This lawsuit followed.

The Plaintiff has requested that this Court issue a temporary restraining order and a preliminary injunction in this matter seeking that this Court stay the state court proceeding brought by the Plaintiff, ***Dear v. City of Albuquerque***, D-202-CV-2020-04023. ***See Plaintiff's Verified Motion for Temporary Restraining Order and Preliminary Injunction*** (hereafter "Plaintiff's Motion") [Document No. 6, at p. 2]. Notably, ***Dear v. City of Albuquerque***, D-202-CV-2020-04023, is the lawsuit filed by the Plaintiff for enforcement of the Inspection of Public Records Act in which the Defendant brought a counterclaim.

The Defendants have filed a Motion to Dismiss [Document No. 3] and a Motion to Stay [Document No. 4], concerning the Plaintiff's claims, which are currently pending. On March 29, 2021, this Court ordered an expedited briefing schedule and ordered that the parties address 28 U.S.C. § 2283. [Document No. 10].

**POINTS AND AUTHORITIES**

**A. The *Younger* Abstention Doctrine Applies To This Matter.**

The United States Supreme Court has discussed the background and policy that led Congress to pass what is now 28 U.S.C. § 2283, the anti-injunction statute in 1793. ***See Atl. C. L. R. Co. v. Bhd. of Locomotive Eng'rs***, 398 U.S. 281, 285-87, 90 S. Ct. 1739, 1742-43 (1970).

> Thus, from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in this Court of the federal questions raised in either system. Understandably this dual court system was bound to lead to conflicts and frictions. Litigants who foresaw the possibility of more favorable treatment in one or the other system would predictably hasten to invoke the powers of whichever court it was believed would present the best chance of success. Obviously, this dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work and "to prevent needless friction between state and federal courts," *Oklahoma Packing Co*. v. *Gas Co*., 309 U.S. 4, 9 (1940), it was necessary to work out lines of demarcation between the two systems. Some of these limits were spelled out in the 1789 Act. Others have been added by later statutes as well as judicial decisions. The 1793 anti-injunction Act was at least in part a response to these pressures.

*Id*. The anti-injunction statute provides as follows:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. On its face, this Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. In the present case, the Plaintiff seeks an injunction because he claims that he will suffer the irreparable harm of the loss of protected First Amended rights to petition his government through the Courts and his statutory right to inspect public records of the government through the prescribed process under IPRA. *See Plaintiff's Motion*, [Document No. 6, at p. 2].[1]

In *Mitchum v. Foster*, 407 U.S. 225, 238-43, 92 S. Ct. 2151, 2160-62 (1972), the United States Supreme Court stated the following with regard to injunctions requested under 42 U.S.C. § 1983:

> Today we decide only that the District Court in this case was in error in holding that, because of the anti-injunction statute, it was absolutely without power in

---

[1] It is axiomatic that the filing of the current action is evidence that the Plaintiff's right to petition his government through the court has not been abridged.

3

>this § 1983 action to enjoin a proceeding pending in a state court under any circumstances whatsoever.

However, fifteen years later, in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-14, 107 S. Ct. 1519, 1525-27 (1987), the United States Supreme Court clarified when it was appropriate for a federal court to intrude upon the actions of a state Court. In *Pennzoil*, Pennzoil obtained a state court judgment for actual and punitive damages against Texaco, alleging that Texaco tortiously induced a third party to breach a contract for sale of stock to Pennzoil. *Id*. Because it lacked resources to post a bond suspending execution of judgment pending appeal, Texaco filed an action in federal district court just before entry of judgment, alleging that the state proceedings violated its constitutional and statutory rights, and sought to enjoin enforcement of the judgment. *Id*. The federal district court issued a preliminary injunction and the Second Circuit Court of Appeals affirmed. *Id*. The United States Supreme Court reversed and stated:

>The courts below should have abstained under the principles of federalism enunciated in Y*ounger* v. *Harris*, 401 U.S. 37 (1971). Both the District Court and the Court of Appeals failed to recognize the significant interests harmed by their unprecedented intrusion into the Texas judicial system. Similarly, neither of those courts applied the appropriate standard in determining whether adequate relief was available in the Texas courts.

*Pennzoil Co.*, 481 U.S. at 10, 107 S. Ct. at 1525. In its analysis, the United States Supreme Court stated the following:

>Both *Juidice* and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained. So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand.

*Pennzoil Co.*, 481 U.S. at 10-14, 107 S. Ct. at 1525-27. Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should

4

assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary. *Pennzoil Co.*, 481 U.S. at 15, 107 S. Ct. at 1528.

> Because Texaco apparently did not give the Texas courts an opportunity to adjudicate its constitutional claims, and because Texaco cannot demonstrate that the Texas courts were not then open to adjudicate its claims, there is no basis for concluding that the Texas law and procedures were so deficient that *Younger* abstention is inappropriate. Accordingly, we conclude that the District Court should have abstained.

*Pennzoil Co.*, 481 U.S. at 17, 107 S. Ct. 1519. That is precisely the situation herein. The Plaintiff filed a suit for an alleged IPRA violation in state court. In response, the Defendant filed a counterclaim. These claims have not yet been adjudicated by the state court. Thus, abstention in this matter is appropriate.

A civil litigant may, of course, seek review in federal court of any federal claim properly asserted in and rejected by state courts. *Huffman v. Pursue, Ltd*., 420 U.S. 592, 605-06, 95 S. Ct. 1200, 1209 (1975). Moreover, where a final decision of a state court has sustained the validity of a state statute challenged on federal constitutional grounds, an appeal to this Court lies as a matter of right. 28 U. S. C. § 1257 (2). *Id*. "But quite apart from appellee's right to appeal had it remained in state court, we conclude that it should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings, a luxury which, as we have already explained, is quite costly in terms of the interests which *Younger* seeks to protect." *Id*.

More recently, in *Thomas v. Texas*, 294 F. Supp. 3d 576, 586-587 (N.D. Tex. 2018), the district court applied the *Younger* abstention doctrine to a claim brought under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, wherein the Plaintiff claimed that she "has been the target of an ongoing conspiracy of ... County officials to persecute and oppress her, and deny her justice in any court in ... County, on any matter, civil or criminal," in retaliation for a wrongful death action she and her siblings filed against County and Sheriff in 2013. In *Thomas*, the district Court determined

5

that three conditions must be met for the doctrine to apply: "(1) the dispute must involve an 'ongoing state judicial proceeding;' (2) an important state interest in the subject matter of the proceeding must be implicated; and (3) the state proceeding must afford an adequate opportunity to raise constitutional challenges." *Thomas*, 294 F. Supp. 3d at 594, quoting *Wightman-Cervantes*, 2004 U.S. Dist. LEXIS 32060, 2004 WL 2512208, at *2 (citing *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996)).

> To determine if a "dispute involves an 'ongoing state judicial proceeding,' the point of reference is the date suit was filed." *Wightman-Cervantes v. Tex.*, No. 3:03-CV-3025-D, 2005 U.S. Dist. LEXIS 5702, 2005 WL 770598, at *3 (N.D. Tex. Apr. 6, 2005) (quoting *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984)). "Additionally, '[t]he state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process,' and, as a result, 'the Younger doctrine requires that federal courts abstain when a state proceeding is pending and the state appellate procedure has not been exhausted.'" 2005 U.S. Dist. LEXIS 5702, [WL] at *3.

*Thomas v. Texas*, 294 F. Supp. at 594. The present case is currently pending in the Second Judicial District of the State of New Mexico. Thus, it is an ongoing judicial proceeding and the first prong of the *Younger* abstention doctrine has been met.

Next, the Court must determine whether the underlying suit involves important state interests. The underlying state lawsuit is a claim brought under IPRA. New Mexico appellate courts have stated the following with regard to IPRA:

> Our democratic system of government necessarily 'assumes the existence of an informed citizenry. . . . Without some protection for the acquisition of information about the operation of public institutions . . . the process of self-governance contemplated by the Framers would be stripped of its substance.'" *Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 1, 283 P.3d 853 (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 31-32, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978).

*Dunn v. Brandt*, 2019-NMCA-061, ¶ 6, 450 P.3d 398, 401. Therefore, the underlying lawsuit involves important state interest and meets the second requirement of the *Younger* abstention doctrine.

As for the third condition, federal courts "should assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987). To overcome this assumption, "the federal plaintiff must show that he had no opportunity to litigate the federal issue in state court." *Thomas v. Texas*, 294 F. Supp. 3d 576, 594 (N.D. Tex. 2018), quoting *Wightman-Cervantes v. Texas*, 2005 U.S. Dist. LEXIS 5702, 2005 WL 770598, at *4 (quoting *DeSpain*, 731 F.2d at 1178). In the present case, the Plaintiff has advanced the very same arguments made in his Complaint before the Second Judicial District Court. *See Plaintiff's Motion for Summary Judgment*, attached hereto as Exhibit A. In his Motion for Summary Judgment, the Plaintiff argues the following in the Introduction:

> This motion presents important issues that go to the core of our need for a transparent and accountable republican form of government as well as protected First Amendment activities. Defendants' counterclaim is based on Plaintiff's protected petitioning of the government through litigation for the enforcement of the Inspection of Public Records Act. Defendant's counterclaim is baseless, should not have been filed, is retaliatory in violation of the First Amendment and should be terminated by this motion for summary judgment.

*Id*. The Second Judicial District Court should be given the opportunity to resolve this issue which is currently pending. Thus, the third condition required for application of the *Younger* abstention doctrine has been met. Based on the foregoing abstention in this matter is appropriate.

Despite the applicability of the *Younger* abstention doctrine, the United States Supreme Court has stated that intervention may be allowed in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad

faith, or where the challenged statute is "'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." ***Huffman v. Pursue, Ltd.***, 420 U.S. 592, 611, 95 S. Ct. 1200 (1975). However, a district court in this Circuit stated:

> Though the courts have grappled with these exceptions on several occasions, they have eluded any distinct or precise formulations." *Phelps II,* 840 F. Supp. at 1451. "However, it has been clear, from the very beginning, that the exceptions provide a very narrow gate for federal intervention." *Arkebauer v. Kiley,* 985 F.2d 1351, 1358 (7th Cir. 1993). As one noted commentator has summarized:
>
> There is no case since Younger was decided in which the [Supreme] Court has found that the exception for bad faith or harassment was applicable. In two cases *[( Hicks v. Miranda,* 422 U.S. 332, 45 L. Ed. 2d 223, 95 S. Ct. 2281 (1975) and *Juidice v. Vail,* 430 U.S. 327, 51 L. Ed. 2d 376, 97 S. Ct. 1211 (1977))]* the Court has specifically held that the exception did not apply.
>
> . . .
>
> The more generalized exception for "extraordinary circumstances" has fared only slightly better. . . .
>
> . . .
>
> Litigants who have sought to bring themselves within the exceptions to Younger have had almost as little success in the lower courts. In the words of one commentator, "as a practical matter * * * the universe of bad-faith harassment claims that can be established is virtually empty." In a very few cases a claim of bad faith or harassment has been accepted while there are . . . many cases in which it has been rejected. The few cases finding that the "extraordinary circumstances" exception applied are also set out along with some in which that exception was held not applicable. These lower court decisions, either way, are presented without any warranty of their correctness, since lower court decisions have been poor harbingers of what the Supreme Court will do in its continuous refashioning of "Our Federalism." Nevertheless, on the basis of what the Supreme Court has done in the few cases in which it has considered the exceptions, the lower court decisions finding no exception applicable seem likely to be more reliable as precedent than those that have come out the other way.
>
> 17A Wright & Miller, *supra* § 4255 (footnotes omitted).

***Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.***, 871 F. Supp. 1331, 1359 (D. Kan.

1994). The bad faith or harassment exception "may not be utilized unless it is alleged and proved" that the state court proceedings were commenced or conducted "in bad faith or motivated by a desire to harass." *Id*., citing *Juidice,* 430 U.S. at 338. This is a "heavy burden" for a party to meet. ***Dolack v. Allenbrand***, 548 F.2d 891, 894 (10th Cir. 1977) (discussing ***Younger*** exceptions).  In the present case, the Defendant did not initiate any proceedings against the Plaintiff and took no action under color of law. Instead, the Plaintiff filed an action against the Defendant and the Defendant brought a counterclaim against the Plaintiff. Therefore, the Plaintiff cannot establish any bad faith on the part of the Defendant. Consequently, an injunction of the state court proceedings is improper in this matter.

**B. The Plaintiff Cannot Establish The Elements For A Preliminary Injunction**

This Court has stated the following with respect to the requirements of a preliminary injunction:

> "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019). "A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and 'the right to relief is clear and unequivocal.'" *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted). The Tenth Circuit has held that
>
>> a party seeking a preliminary injunction . . . must demonstrate (1) that it has a substantial likelihood of prevailing on the merits; (2) that it will suffer irreparable harm unless the preliminary injunction is issued; (3) that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) that the preliminary injunction if issued will not adversely affect the public interest.
>
> *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). "District courts have discretion over whether to grant preliminary injunctions...." *Free the Nipple—Fort Collins*, 916 F.3d at 796 (citation omitted).

***City of Albuquerque v. Barr***, No. 20-371 KG/KK, 2021 U.S. Dist. LEXIS 16211, at *13-14 (D.N.M. Jan. 28, 2021).  In the present case, there is no substantial likelihood that the Plaintiff will prevail on the merits. In fact, the Defendants have filed a Motion to Dismiss, which the

9

Defendants hereby incorporate in full by reference. *See Motion to Dismiss* [Document No. 3]. The acts of filing a counterclaim and seeking discovery do not violate the Plaintiff's rights. None of the cases cited by Plaintiff, including *Lusby v. T.G. & Y. Stores*, 749 F.2d 1423, 1431 (10th Cir.1984), cert. denied, 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985), and *Anthony v. Baker*, 767 F.2d 657, 662–63 (10th Cir.1985), involve a counterclaim brought in response to a complaint. The Plaintiff's ability right to petition the Court is unabridged as evidenced by the filing of this action. Moreover, the filing of a counterclaim and seeking discovery in litigation brought by a plaintiff is not conduct committed under color of state law. Therefore, the Plaintiff's Complaint fails to state a claim for which relief can be granted under 42 U.S.C. § 1983. Finally, the individually named Defendants are entitled to qualified immunity. Thus, there is a substantial likelihood that the Plaintiff's claims will be dismissed.

Next, the Plaintiff will not suffer irreparable harm unless the preliminary injunction is issued. These matters are pending before the state court. The state district court judge is capable of adjudicating these matters and no harm will come to the Plaintiff if an injunction is not issued. In fact, a reading of the Plaintiff's Motion reveals that he has failed to articulate any irreparable harm. Again, the Plaintiff's lack of any constitutional injury is evidence by the filing of the instant action. Next, the harm that a preliminary injunction will cause the Defendants outweighs the Plaintiff's perceived but unarticulated harm. The Plaintiff seeks to prevent the Defendant from pursuing its counterclaim and from obtaining discovery in this matter. The Defendant is unable to defend its claims against the Plaintiff absent some discovery. Recently the New Mexico Court of Appeals ruled that the Rules of Civil Procedure do indeed govern cases brought under the Inspection of Public Records Act. *Boulanger v. Rio Rancho Pub. Schs*, No. A-1-CA-36953, 2021 N.M. App. Unpub. LEXIS 96, at *6 (Ct. App. Mar. 23, 2021), citing Rule 1-001(A)

NMRA (specifying that the Rules of Civil Procedure apply to "all suits of a civil nature . . . [unless] there are contrary statutory provisions concerning special statutory or summary proceedings").  Thus, the Defendant is entitled to conduct discovery in this matter in accordance with the New Mexico Rules of Civil Procedure. Therefore, an injunction will irreparably harm the Defendant in this matter. Finally, the preliminary injunction if issued will adversely affect the public interest. The Defendant's counterclaim is designed to protect the taxpayers of the City of Albuquerque from frivolous and/or meritless litigation. Therefore, the Plaintiff cannot establish the requisite elements for a preliminary injunction and the Plaintiff's Motion should be denied.

This Court has also stated the following with regard to disfavored preliminary injunctions:

> Evens so, "courts 'disfavor' some preliminary injunctions and so require more of the parties who request them." *Free the Nipple—Fort Collins*, 916 F.3d at 797 (citation omitted). "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial." *Id.* Rather, "a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id.* "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor." *Id.* (quotations omitted).

*City of Albuquerque v. Barr*, No. 20-371 KG/KK, 2021 U.S. Dist. LEXIS 16211, at *13-14 (D.N.M. Jan. 28, 2021). In the present case, the Defendant requests that this Court disfavor the Plaintiff's request for preliminary injunction. As an exhibit attached to the Plaintiff's Motion, he attaches an email between Defendant Nair and lawyers from the City's Legal Department, which is protected from discovery by the attorney-client privilege. ***See emails***, attached to Plaintiff's Motion [Document No. 6-3]. The Defendant served the Plaintiff with discovery requests concerning the manner in which the Plaintiff obtained the communication protected by the attorney-client privilege. ***See Discovery Requests***, attached as Exhibit 7 to Plaintiff's Complaint

[Document No. 1-2], *and see Certificate of Service*, attached hereto as Exhibit B.  The Plaintiff filed his Complaint after receiving these discovery requests. *See Plaintiff's Complaint*, [Document No. 1-2]. The Plaintiff filed a Motion for Protective Order in the state court proceeding four days later. *See State Court Docket*, attached hereto as Exhibit C. A stay in state court would effectively prevent the Defendant from obtaining the discovery it needs to defend against the Plaintiff's claims and to pursue its own counterclaim in this matter. Moreover, it would effectively prevent the Defendants from ascertaining how the Plaintiff procured materials protected from disclosure. This seems to be the very relief the Plaintiff is seeking in these proceedings. Thus, granting an injunction in this matter would change the status quo and it would grant all the relief that the Plaintiff could expect from a trial win. Thus, the Plaintiff's request for an injunction must be denied.

## CONCLUSION

Based on the foregoing, the Plaintiff's Verified Motion for Temporary Restraining Order and Preliminary Injunction is prohibited by the *Younger* abstention doctrine and by 28 U.S.C. § 2283. Further, the Plaintiff cannot meet requirements needed to obtain a preliminary injunction or temporary restraining order. As such, the Defendants request that this Court deny the Plaintiff's Motion and for such other relief as the Court deems just and proper.

Respectfully Submitted:

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: */s/ Jonlyn M. Martinez*
JONLYN M. MARTINEZ
Attorney for Defendants
P.O. Box 1805
Albuquerque, NM 87103-1805
P: (505) 247-9488
jonlyn@jmartinezlaw.net

I hereby certify that a copy of the foregoing
was served via CM/ECF on
April 2, 2021, to all counsel of record:

*/s/ Jonlyn M. Martinez*

13