**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**2/23/2021 11:37 AM**
**CLERK OF THE COURT**
**Patsy Baca**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**JEREMY DEAR,**

               **Plaintiff,**

v.                                                    **No. D-202-CV-2020-04023**

**CITY OF ALBUQUERQUE and,**
**NYVIA BARRAZA (in her official capacity as records custodian)**

               **Defendants.**

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff Jeremy Dear, by and through undersigned counsel Western Agriculture, Resource and Business Advocates, LLP (A. Blair Dunn, Esq. and Jared R. Vander Dussen, Esq.) and provides his Motion for Summary Judgment.

## INTRODUCTION

This motion presents important issues that go to the core of our need for a transparent and accountable republican form of government as well as protected First Amendment activities. Defendants' counterclaim is based on Plaintiff's protected petitioning of the government through litigation for the enforcement of the Inspection of Public Records Act. Defendant's counterclaim is baseless, should not have been filed, is retaliatory in violation of the First Amendment and should be terminated by this motion for summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    On November 18, 2019, through counsel, Mr. Dear submitted a written IPRA request via email to Defendant City seeking records relating to Mr. Dear' s

Exhibit A

alleged failure to follow an order to record citizen encounters and his alleged insubordination. *See* Exhibit 1 attached to the Complaint, IPRA from Plaintiff.

2. Specifically, in his November 18, 2019, IPRA request Mr. Dear sought:

> "Copies of all documents pertaining to the City's 'recent review of the CADs used by Sgt. Norris in his investigation, as matched to all of Dear's recordings in Evidence.com, clearly shows that Dear did not follow the order and was insubordinate a substantial majority of the time -possibly even more so than Norris originally calculated' as asserted on the attached filing on page 6 by the City through its Legal Department.
>
> Where those records exist in electronic format, it is requested that they be produced in that format. If you have any questions at all regarding these requests, please advise at your earliest convenience."

*See* November 18, 2019, IPRA request attached to the Complaint as Exhibit #1.

3. In her December 10, 2019, correspondence, Defendant Barraza denied Plaintiff's IPRA request and asserted that regarding Mr. Dear' s IPRA request:

> We are denying inspection of these records because allowing their inspection would reveal the thought process used by the Legal Department to identify them. The specific records used to support the statement were located, identified, and collected at the direction of the Legal Department while it was preparing to litigate the issues at bar. As such, these records are attorney work product and are exempt from inspection under the Inspection of Public Records Act. See NMSA 1978, § 14-2-l(F) (attorney-client privilege), (H) (as otherwise provided by law, including NMRA Rule 1-026 (attorney work product))."

*See* December 10, 2019, letter attached to the Complaint as Exhibit #4.

4. Mr. Dear then consulted with his legal counsel, Mr. Grover, who correctly advised him that there is no known exception which precludes production of public records because they, "reveal the thought process used by the Legal Department to identify [the records]." *See* Exhibit 1 attached hereto, Affidavit of Jeremy Dear.

Exhibit A

5.  Plaintiff's reliance on the correct advice of his counsel that there was no such exception to IPRA and that he had a First Amendment right to petition the Court for a redress of the potential violation of his statutory rights under IPRA was in good faith. *See* Exhibit 1 attached hereto, Affidavit of Jeremy Dear.

6.  Mr. Grover's advice to Plaintiff was made in good faith and upon non-frivolous grounds that an IPRA violation had occurred that was actionable to resolve by filing a complaint in the district court. *See* Exhibit 2 attached hereto, Affidavit of Attorney Thomas Grover.

7.  Mr. Grover's filing of the instant action was not frivolous or in bad faith, and Mr. Grover had a good faith basis for believing that the denial of records by the Defendant was improper in addition to being done for a retaliatory purpose.  *See* Exhibit 2 attached hereto, Affidavit of Attorney Thomas Grover.

8.  The Defendant's counterclaim in this matter is frivolous, retaliatory and was filed in bad faith as part of a directed plan to use the judicial system to deny Plaintiff his First Amendment right to petition his government for redress.  *See* Exhibit 2a attached hereto, Affidavit of Attorney Thomas Grover.

## I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact." Rule 1-056 NMRA. Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Tempest Recovery*

Exhibit A

*Servs. Inc. v. Belone,* 2003- NMSC-019, 134 N.M. 133. The summary judgment movant need only make prima facie showing that there is no genuine issue of material fact, and that on undisputed material facts, judgment is appropriate as a matter of law; the burden then shifts to the opponent to show at least reasonable doubt, rather than slight doubt, as to existence of genuine issue of fact. *Ciup v. Chevron US.A. Inc.*, 1996-NMSC-062, 122 N.M. 537. The moving party need not demonstrate beyond all possibility that no genuine factual issue exists. *Parker v. E.l Dupont de Mours & Coll., Inc.,* 1995-NMCA-086 1 10, 121 N.M. 120.

Even if there is a dispute over immaterial issues, summary judgment is proper as long as no material facts are disputed. *San Juan Water Com'n v. Taxpayers and Water Users of San Juan County*, 116 N.M. 106,860 P.2d 748 (1993). "[O]nce this prima facie showing is made by [the proponent], the burden shifts to [the opponent] to come forward and demonstrate that a genuine issue of fact exists .... " *Tinley v. Davis*, 1980-NMCA-047, 17, 94 N.M. 296. Summary judgment serves the important purpose of expediting litigation by assessing the pleadings and available evidence at an early stage, thus reserving resources for those matters in which genuine issues of material fact exist, warranting trial. *See Goffe v. Pharmaseal Laboratories, Inc.*, 1976-NMCA-123, 90 N.M 764, 568 P.2d 600, *affirmed in part, reversed in part* 1977-NMSC-071, 90 N.M. 753, 568 P.2d 589.

## II.    THE INSPECTION OF PUBLIC RECORDS ACT.

The overriding message of *Republican Party II* is that "every citizen has a fundamental right to have access to public records." *Bd. of Comm'rs of Doña Ana*

Exhibit A

*Cnty. v. Las Cruces Sun–News,* 2003–NMCA–102, ¶ 16, 134 N.M. 283, 76 P.3d 36 (internal quotation marks and citation omitted), *overruled on other grounds by Republican Party II,* 2012–NMSC–026, 283 P.3d 853; *see* § 14–2–1(A). *Edenburn v. New Mexico Dep't of Health,* 2013-NMCA-045, 299 P.3d 424, 428.

IPRA must be construed in light of its purpose, "to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *San Juan Agric. Water Users Ass'n v. KNME–TV (San Juan),* 2011–NMSC–011, ¶ 14, 150 N.M. 64, 257 P.3d 884 (internal quotation marks and citation omitted). IPRA requires an agency's custodian of records to timely respond and IPRA forbids the wrongful denial of a request for records. *See* §§ 14–2–8 to –12. The statutes create an affirmative obligation on an agency to "permit the inspection immediately or as soon as practicable under the circumstances, but not later than fifteen days after receiving [the] written request," (Section 14–2–8(D)), or to issue a denial "with a written explanation of the denial ... within fifteen days after the request for inspection was received," (Section 14–2–11(B)(3)).

Section 14–2–11 requires a public entity to respond to a records request within fifteen days unless the "request has been determined to be excessively burdensome or broad." Section 14–2–11(A). Section 14–2–11 also addresses the damages available if the public entity does not adhere to the denial procedures. Under IPRA's "enforcement" provision, an award of attorney fees is mandatory when (1) the request has been denied, and (2) the requester is successful in a court action to enforce the Act. Under the plain language of the "enforcement" provision an inappropriate delay

Exhibit A

is akin to denial. *Bd. of Comm'rs of Dona Ana Cty. v. Las Cruces Sun-News*, 2003-NMCA-102, 134 N.M. 283, 293–94, 76 P.3d 36, 46–47 *overruled on other grounds by Republican Party of New Mexico v. New Mexico Taxation & Revenue Dep't*, 2012-NMSC-026, 283 P.3d 853. Disclosure is enforced by imposing a cost-including attorney fees-for nondisclosure within the time frames set by IPRA. As a matter of law LACC violated NMSA by denying disclosure of public records.

## III. ARGUMENT

Defendant's counterclaim for malicious abuse of process improperly seeks to impose liability for Plaintiff's protected efforts to petition the government for transparency under IPRA. The undisputed material facts establish that Plaintiff's activities were protected by the First Amendment and Defendants' counterclaim is therefore barred by both the *Noerr-Pennington* doctrine and the absolute litigation privilege. Courts across the country, including in New Mexico, have rejected claims like these to prevent a chilling effect on protected First Amendment activities. The Court should do the same here to additionally stop a chilling effect on efforts at transparency in government under IPRA and grant summary judgment against Defendant's counterclaim.

### A. Defendants' Counterclaim is Barred Under the *Noerr-Pennington* Doctrine Because They Are Based On Protected First Amendment Activity.

The right to petition the government is one of our "indispensable democratic freedoms." *Thomas v. Collins*, 323 U.S. 516, 530 (1945). Embedded in the right to petition the government for redress of grievances under both the United States and

Exhibit A

New Mexico Constitutions is "the right of access to the courts." *Board of Educ. of Carlsbad Mun. Sch. v. Harrell*, 1994-NMSC-096, 118 N.M. 470, 480 (1994). *Accord Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").

Recognizing the essential and protected nature of activity aimed at influencing the government, the Supreme Court of New Mexico has applied the federal *Noerr-Pennington* doctrine to bar claims seeking damages for petitioning activities protected by the First Amendment. *Cordova v. Cline*, 2017-NMSC-020, 396 P.3d 159. The *Noerr-Pennington* doctrine emerged in the antitrust context and provides protection for petitioners from federal antitrust claims based on petitioning activity. *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *see also Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) ("[L]iability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action." (citing *Noerr-Pennington* doctrine)); *Sierra Club v. Butz*, 349 F. Supp. 934, 938-39 (N.D. Cal. 1972) ("[A]ll persons, regardless of motive, are guaranteed by the First Amendment the right to seek to influence the government or its officials to adopt a new policy, and they cannot be required to compensate another for loss occasioned by a change in policy should they be successful."). Since its inception, the *Noerr-Pennington* doctrine has been applied broadly by federal and state courts throughout the country to bar claims implicating First Amendment rights, including in New

Exhibit A

Mexico. *See Cordova*, 2017-NMSC-020, ¶ 26, 396 P.3d at 167 (finding school board recall petition activities "fall within the rubric of the *Noerr-Pennington* doctrine").

There is one narrow exception to *Noerr-Pennington*'s bar on tort liability for petitioning the government. Liability can be imposed for actions taken to petition the government only if the plaintiff proves that the challenged activity is a "mere sham" lacking a genuine, legitimate purpose of procuring favorable governmental action. *Cordova*, 2017-NMSC-020, ¶ 27, 396 P.3d at 168. "To constitute a sham, the petitioning activities must meet a two-part test. First, the petitioning activities 'must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'" *Id.* ¶ 28 (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)). "Only upon a finding that the challenged activities were objectively baseless may the fact-finder proceed to the second element of the test—whether the subjective motivation underlying the challenged conduct was improper." *Id.* Even an "improperly motivated" lawsuit is a sham only if it is "baseless." *Prof'l Real Estate Inv'rs*, 508 U.S. at 58-59. A successful effort to influence government action cannot be characterized as a sham. *Id.* at 58.

Here, Defendants' counterclaim is barred under the *Noerr-Pennington* doctrine. First, Plaintiff's conduct giving rise to Defendants' counterclaim is protected First Amendment activity—petitioning the government through legal proceedings to address a denial of inspection of public records provided for in IPRA. It is therefore subject to *Noerr-Pennington*'s protection. Second, the sham exception to the *Noerr-Pennington* doctrine does not apply to remove Plaintiff's petitioning activity from

Exhibit A

First Amendment protection. Plaintiff's initiated legal proceeding here was not objectively baseless. Nor did Plaintiff have an improper subjective motivation.

### 1. Defendants' Counterclaim is Based On Defendants' Protected First Amendment Activities.

The gist of all of Defendants' core allegations is the same: Plaintiff knowingly initiated a frivolous legal proceeding to enforce the provisions of IPRA, which allegedly injured Defendants in the process. That alleged action constitutes core First Amendment activity to petition the government and, therefore, is exempt from liability under the *Noerr-Pennington* doctrine. Indeed, Defendants' counterclaim hinges upon Plaintiff's action to initiate this legal proceeding. The *Noerr-Pennington* doctrine therefore shields Plaintiff against Defendants' counterclaim unless the "sham" exception applies—which it does not. *See Cordova*, 2017-NMSC-020, ¶¶ 24-28, 396 P.3d at 166-67.

### 2. Defendants Cannot Show That Plaintiff's Petitioning Activity Falls Within the "Sham" Exception to the *Noerr-Pennington* Doctrine.

The undisputed material facts here establish that Plaintiff's activity does not fall within the sham exception to *Noerr-Pennington*, and Defendants cannot show otherwise. To constitute a sham, the petitioning activities must be both (1) objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; and (2) based on an improper subjective motivation. *Cordova*, 2017-NMSC-020, ¶ 28, 396 P.3d at 168. Plaintiff's petitioning activity was not "objectively baseless," as courts and agencies repeatedly have recognized. *See* Undisputed Fact Nos 4-7. That alone bars Defendants' counterclaim. *See Cordova*, 2017-NMSC-020, ¶

Exhibit A

28, 396 P.3d at 168; *Prof'l Real Estate Inv'rs*, 508 U.S. at 58 ("[W]e have explicitly observed that a successful effort to influence governmental action ... certainly cannot be characterized as a sham." (internal quotation omitted)). Defendants' claim also fails because Plaintiff had no improper subjective motivation, as he was motivated by the sincere desire to investigate the actions taken by the City of Albuquerque against him and to enforce the requirements of transparency in government that IPRA places on the City of Albuquerque.

Plaintiff's initiation of this lawsuit was not objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, because Plaintiff consulted with a knowledgeable attorney who correctly opined as to valid exceptions to IPRA production, and courts recognized the merit of these type of actions brought by Plaintiffs in a plethora of New Mexico jurisprudence.

Far from being a case where "no reasonable litigant could realistically expect success on the merits," the instant proceeding is one where the Plaintiff could expect success or at least an answer from the Court as to whether the denial of records was proper under IPRA. *See Prof'l Real Estate Inv'rs*, 508 U.S. at 60.

Defendants' failure to meet the "objectively baseless" prong dooms their claim, and the Court can grant summary judgment on that basis alone. However, even if Defendants could somehow show that Plaintiff's successful petitioning activity was objectively baseless, the undisputed material facts show that the Plaintiff did not have an improper subjective motivation. "[D]ifferences of opinion and political views" are not improper subjective motivations. *Cordova*, 2017-NMSC-020, ¶ 41, 396 P.3d at

Exhibit A

171. As the Supreme Court of New Mexico did in *Cordova*, the Court here should reject Defendants' claim and protect the right to petition the government under the First Amendment as well as the statutory right to inspect records under IPRA.

## B. Defendant's Counterclaim is Also Barred by the Absolute Litigation Privilege.

In addition to the *Noerr-Pennington* doctrine, New Mexico courts recognize an "absolute privilege" against liability based on judicial proceedings. *See, e.g.*, *Superior Const., Inc. v. Linnerooth*, 1986-NMSC-008, ¶ 10, 103 N.M. 716, 719 ("New Mexico courts have long recognized the absolute privilege accorded judicial proceedings."); *Romero v. Prince*, 1973-NMCA-122, ¶ 23, 85 N.M. 474, 477 (holding letter from attorney written to achieve client's objective in pending litigation was absolutely privileged); *Stryker v. Barbers Super Markets, Inc.*, 1969-NMCA-119, ¶ 13, 81 N.M. 44, 45-46 (holding that "defamatory matter in judicial pleadings, even if false and malicious, is absolutely privileged" so long as it is "reasonably related to the subject of inquiry"). The absolute litigation privilege "applies equally to parties as it does to a party's counsel." *Helena Chem. Co. v. Uribe*, 2012-NMSC-021, ¶ 29, 281 P.3d 237, 246.

Courts across the country apply a litigation privilege to bar vengeful parties and their attorneys from bringing lawsuits against their adversaries or their adversaries' attorneys. *See, e.g.*, *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1010 (Ill. Ct. App. 2015) (dismissing claims against attorney and law firm based on "absolute attorney litigation privilege"); *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So.3d 240, 245 (Fla. Dist. Ct. App. 2011) (same); *Jacob B. v. Cnty. of Shasta*, 40

11

Exhibit A

Cal. 4th 948, 956 (2007) (noting that the litigation privilege "is absolute and applies regardless of malice"); *Reynolds v. Schrock*, 142 P.3d 1062, 1068 (Or. 2006) ("lawyer acting on behalf of a client and within the scope of the lawyer-client relationship is protected by [the litigation privilege]" and is not liable for allegedly committing a tort against a nonclient); *Toles v. Toles*, 113 S.W.3d 899, 910-11 (Tex. App. 2003), *abrogated on other grounds by Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) ("[A]n attorney's conduct, even if frivolous or without merit, is not actionable as long as the conduct was part of the discharge of the lawyer's duties in representing his or her client."); *Sodergren v. Johns Hopkins Univ. Applied Physics Lab.*, 773 A.2d 592, 603 (Md. Ct. App. 2001) (affirming summary judgment against defamation and invasion of privacy claims based on letter written by nonparty witness where letter was related to settlement of judicial proceeding).

Defendants' claims are solely based upon Plaintiff's conduct in connection with legal proceedings. The email obtained by Plaintiff betrays that the impetus behind the IPRA denial and the counterclaim relates to lawsuits that Plaintiff filed. The actions of the Plaintiff and his attorneys in those judicial proceedings are subject to the litigation privilege recognized in New Mexico and throughout the rest of the country. *See, e.g.*, *Romero v. Prince,* 1973-NMCA-12, 85 N.M. 474, 477. There is no dispute as to any material fact that would remove Plaintiff's actions from that protection. The Court should grant summary judgment against Defendants' counterclaim for this additional reason.

12

Exhibit A

**C. Allowing Plaintiffs' Claims to Proceed Would Produce a Chilling Effect Contrary to the First Amendment.**

The *Noerr-Pennington* doctrine and litigation privilege exist for similar reasons: to protect against the chilling effect of litigation and threatened litigation against First Amendment activity. *See, e.g.*, *Cordova*, 2017-NMSC-020, ¶ 29, 296 P.3d at 168 (explaining that the "heightened standard" under *Noerr-Pennington* is "necessary to avoid a chilling effect on the exercise of this fundamental First Amendment right" (internal quotations omitted)).

If people petitioning the government or filing a lawsuit to enforce having the government follow the law can be sued for those actions—even if they have litigated in good faith—they will be far more hesitant to exercise those First Amendment rights. That is true even if the lawsuits against them are ultimately unsuccessful, but they are subjected to invasive discovery and forced to expend time and resources to defend themselves. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. Of Culinary Workers*, 542 F.2d 1076, 1083 (9th Cir. 1976) ("[W]here a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.").

Here, Plaintiff's actions underlying Defendants' claim are core First Amendment activity. Permitting Defendants' baseless claim to go forward would undermine Plaintiff's First Amendment rights and may discourage others from exercising their First Amendment rights or pursuing transparency in their

Exhibit A

government through IPRA. The Court should reject Defendants' clear attempt to seek vengeance on Plaintiff for nothing more than exercising his right to petition the government for transparency and a redress of his grievances.

## CONCLUSION

Defendants' claim is an attempt at retribution against Plaintiff for exercising his First Amendment right to petition the government for transparency under IPRA. There are no disputes over any material fact evidencing that this is the case. The counterclaim is baseless as well as retaliatory and, to prevent a chilling effect on protected First Amendment activity, it should not proceed further. Plaintiff therefore requests that the Court grant summary judgment against Defendants' counterclaim.

Respectfully submitted;

WESTERN AGRICULTURE, RESOURCE AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A.  Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
*Attorneys for Plaintiffs*
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com

14

Exhibit A

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2021, I filed the foregoing via the

New Mexico E-filing system causing all parties of record to be served electronically.


*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.

15

Exhibit A

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

# EXHIBIT 1

**JEREMY DEAR,**

        **Plaintiff,**

v.                                                  No. D-202-CV-2020-04023

**CITY OF ALBUQUERQUE and,**
**NYVIA BARRAZA (in her official capacity as records custodian)**

        **Defendants.**

### AFFIDAVIT OF JEREMY DEAR

STATE OF NEW MEXICO    )
                     )ss
COUNT OF BERNALILLO    )

        COMES NOW, Jeremy Dear, and states upon his oath;

1. I am over the age of eighteen years. I have personal knowledge of the averments made herein.

2. I initiated the IPRA request which is at the center of this lawsuit with the City of Albuquerque Custodian of Public Records.

3. I have been sufficiently advised by my legal counsel, A. Blair Dunn, regarding the making of this affidavit and effects of waiving attorney-client privilege with regard to the communications of advice that I received from my attorney Thomas Grover with regard to initiation of this litigation and his advice regarding the City of Albuquerque's response to the IPRA request that he made at my behest.

4. I explicitly waive communication privilege with regard to the advice that he gave me regarding the initiation of the present litigation. This waiver is specifically limited to the information relating solely to the initiation of only this lawsuit and the advice he gave me regarding filing the present action.

5. In good faith, pursuant to IPRA I made the request at issue because I desired to understand the City's actions toward me in different proceedings.

6. Mr. Grover advised me that the response to my IPRA request did not comport with any understood or legitimate exception to IPRA under New Mexico jurisprudence.

Exhibit A

7. Mr. Grover advised me in his learned experience in IPRA that I had a legitimate claim that could be pursued to achieve a resolution in Court as to the propriety of the City's reasons for denying my IPRA request.

8. I directed Mr. Grover to initiate the instant civil action in order to obtain records from the City of Albuquerque that I in good faith believe are statutorily my right to receive, to promote transparency in government, and to obtain a judicial opinion on the propriety of the excuse offered by the City of Albuquerque for denying my records request.

FURTHER AFFIANT SAYETH NAUGHT.

_2/22/2021_
DATE

_____
JEREMY DEAR

SUBSCRIBED AND SWORN TO BEFORE ME this _22nd_ day of _February_ 2021, by Jeremy Dear.

_____
NOTARY PUBLIC

My Commission Expires:

OFFICIAL SEAL
TAMMY PELLETIER
Notary Public State of New Mexico
My Commission Expires _9-13-23_

Exhibit A

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**JEREMY DEAR,**

# EXHIBIT 2

     **Plaintiff,**

**v.**                                          **No. D-202-CV-2020-04023**

**CITY OF ALBUQUERQUE and,**
**NYVIA BARRAZA (in her official capacity as records custodian)**

     **Defendants.**

### AFFIDAVIT OF THOMAS GROVER

STATE OF NEW MEXICO      )
                           )ss
COUNT OF BERNALILLO     )

     COMES NOW, Thomas Grover, and states upon his oath;

1. I am over the age of eighteen years. I have personal knowledge of the averments made herein.

2. I am a duly licensed attorney in good standing with the New Mexico Bar Association and I have successfully litigated several IPRA matters over the last several years such that I am very familiar with the law and able to offer competent advice to clients on the subject.

3. I made the IPRA request which is at the center of this lawsuit with the City of Albuquerque Custodian of Public Records for my client Jeremy Dear who was an undisclosed principal.

4. I understand that Mr. Dear has been sufficiently advised by his other legal counsel, A. Blair Dunn, regarding the effects of waiving attorney-client privilege with regard to the communications of advice that I gave Mr. Dear with regard to initiation of this litigation regarding the City of Albuquerque's response to the IPRA request and that he has authorized me to make the disclosure that follow in this affidavit.

5. I understand that I am making myself at witness at the client's request such that I will not be able to provide him representation regarding his motion for summary judgement, but I also understand that Mr. Dunn is able to provide him competent counsel while I act as a witness.

6. Mr. Dear has a good faith basis for his IPRA request in attempting to obtain transparency regarding the City's actions toward him in different proceedings.

Exhibit A

7. In my learned experience the response Mr. Dear received in response to his IPRA request did not comport with any understood or legitimate exception to IPRA under New Mexico jurisprudence or under the statute itself.

8. Based upon my experience as an attorney I advised Mr. Dear that he had a legitimate claim that could be pursued to achieve a resolution in Court as to the propriety of the City's reasons for denying his IPRA request.

9. I advised Mr. Dear to initiate the instant civil action in order to obtain records from the City of Albuquerque he has statutorily my right to receive unless there is a valid exception to their production, to promote transparency in government, and to obtain a judicial opinion on the propriety of the excuse offered by the City of Albuquerque for denying his records request.

10. I have also received a copy of an email, attached hereto as Exhibit 2a, that evinces that there is concerted effort and plan to retaliate against Mr. Dear by City of Albuquerque personnel for his exercise of his First Amendment rights and that the counterclaim in this lawsuit is the direct outcome of that plan by city employees to intentionally target and harm him.

FURTHER AFFIANT SAYETH NAUGHT.

_____
DATE

_____
THOMAS GROVER

SUBSCRIBED AND SWORN TO BEFORE ME this _18_ day of
_Feb._, 2021, by Thomas Grover.

_____
NOTARY PUBLIC

My Commission Expires: _10-18-22_

Official Seal
EDDIENA MORRIS
Notary Public
State of New Mexico
My Comm. Expires 10-18-22

Exhibit A

# EXHIBIT 2a

From:       Nair, Sarita
Sent:       Tuesday, May 19, 2020 1:54 PM
To:         Hults, Samantha M; Kountz, Melissa; Geier, Mike
Cc:         Aguilar Jr., Esteban A; Moody, Devon P.; Haney, Kelly K.
Subject:    RE: A/C Jeremy Dear

Agreed, thank you everyone.
Sarita

From: Hults, Samantha M.
Sent: Tuesday, May 19, 2020 11:50 AM
To: Kountz, Melissa <mkountz@cabq.gov>; Nair, Sarita <snair@cabq.gov>; Geier, Mike <mgeier@cabq.gov>
Cc: Aguilar Jr., Esteban A. <eaj@cabq.gov>; Moody, Devon P. <dmoody@cabq.gov>; Haney, Kelly K. <khaney@ca
Subject: RE: A/C Jeremy Dear

Thank you Melissa – This case has been a long road and I agree that if further actions are filed by Dear we should
consider moving for sanctions or other appropriate action.

Sincerely,
Samantha

From: Kountz, Melissa <mkountz@cabq.gov>
Sent: Tuesday, May 19, 2020 11:09 AM
To: Nair, Sarita <snair@cabq.gov>; Geier, Mike <mgeier@cabq.gov>
Cc: Aguilar Jr., Esteban A. <eaj@cabq.gov>; Hults, Samantha M. <shults@cabq.gov>; Moody, Devon P.
<dmoody@cabq.gov>; Haney, Kelly K. <khaney@cabq.gov>
Subject: A/C Jeremy Dear

All,
Attached is the order from the New Mexico Supreme Court denying Mr. Dear's petition for certiorari. They will is
mandate to the Court of Appeals, which will issue a mandate to the District Court, which will enter a judgment on
mandate closing the case.

Given Mr. Dear's meritless persistence in the past, I recommend that should anything further be filed on this issu
City seriously consider moving for sanctions or, if filed in front of the Personnel Board, injunctive relief. If/when t
arises, I will fully brief you on the particulars and provide a supported recommendation.

Thank you!

Melissa

Exhibit A