IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY DEAR,

    Plaintiff,

v.                                Civ. No. 21-0250 KG/KK

SARITA NAIR,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Sarita Nair's Amended Renewed Motion for Summary Judgment filed on August 23, 2024. (Doc. 118). Plaintiff Jeremy Dear filed his Response, on September 26, 2024. (Doc. 121).[2] Defendant filed her Reply, on October 9, 2024. (Doc. 114). Having considered the briefing and the applicable law, the Court denies, in part, and grants, in part, Defendants' Motion.

### I.    Background[3]

As described in this Court's previous Memorandum Opinion and Order, the facts giving rise to this case stem from an Inspection of Public Records Act (IPRA) lawsuit. (Doc. 80). Nearly ten years ago, in December 2014, the Albuquerque Police Department (APD) fired Plaintiff Jeremy Dear. (Doc. 118) at 4. The reason given for Mr. Dear's termination was his failure to record civilian encounters, as ordered by his superior officers. *Id.* At that time

---

[1] Plaintiff's complaint initially named Mayor Tim Keller and the City of Albuquerque as defendants. The Court, however, granted these defendants summary judgment in its earlier Memorandum Opinion and Order, (Doc. 80). Thus, Ms. Nair is the only remaining defendant.
[2] The Court notes that (Doc. 121) was technically filed on October 24, 2024, due to a clerical error with the accompanying exhibits. Because Plaintiff's Response was initially filed on September 26, 2024, the Court uses that date as the operative date of filing.
[3] Unless otherwise noted, the following facts are undisputed.

1

Mr. Dear was fired, the City of Albuquerque (City) was under the leadership of Mayor R.J. Berry's administration. *Id.*

    A.    *2015 Termination-Related Litigation*

Years of administrative proceedings and litigation followed Mr. Dear's termination. In 2015, Mr. Dear appealed his termination to the City Personnel Board. *Id.* The administrative hearing officer assigned to Mr. Dear's case found he was not credible and recommended upholding his termination. *Id.* And while the Personnel Board recommended reinstating Mr. Dear, its decision was overturned by the state district court. *Id.* at 5. Mr. Dear then unsuccessfully appealed the district court's decision. *Id.* In August 2018, the state district court entered judgment on the mandate against him consistent with a New Mexico Court of Appeals decision affirming Mr. Dear's termination. *Id.* On March 18, 2019, Mr. Dear filed for relief from the state court's final judgment. *Id.* The district court denied that motion and Mr. Dear's subsequent motion to reconsider. *Id.* The New Mexico Court of Appeals declined to review the decision, and on May 19, 2020, the New Mexico Supreme Court denied certiorari. *Id.*

    B.    *2020 IPRA Litigation*

Less than two months later, in July 2020, Mr. Dear filed the IPRA lawsuit underlying this case. *Id.* Mr. Dear's IPRA request was based on a November 18, 2019, record request for documents that the City referred to in a footnote in a court brief. *Id.* This request was for:

> Copies of all documents pertaining to the City's "recent review of the CADs used by Sgt. Norris in his investigation, as matched to all of Dear's recording in Evidence.com, clearly shows that Dear did not follow the order and was insubordinate a substantial majority of the time – possibly even more so than Norris originally calculated" as asserted on the attached filing on page 6 by the City through its Legal Department.

*Id.* On December 10, 2019, the City's record custodian denied Mr. Dear's request, explaining that it asked for attorney-client privileged material and attorney work product. *Id.*

2

On August 5, 2020—shortly after Mr. Dear filed his IPRA suit—the City's outside legal counsel filed a counterclaim against Mr. Dear for malicious abuse of process. *Id.* at 6. Less than nine months later, on April 29, 2021, the district court granted Mr. Dear summary judgment on the City's malicious abuse of process claim. *Id.* On September 9, 2022, the court ordered the City to produce additional documents, which the City did. *Id.* In its final judgment adjudicating Mr. Dear's IPRA case, the state district court awarded him attorneys fees and costs and $700 pursuant to NMSA 1978, Section 14-2-11 based on the City's seven-day delay in providing him a written denial. *Id.*; (Doc. 77-2). City did not object. (Doc. 118) at 6.

The court then rejected Mr. Dear's request for employment-related damages for two reasons. First, the court found Mr. Dear's employment-related damages speculative. *Id.* Second, the Court determined that Mr. Dear's request for damages were at issue in his 2015 employment-related litigation with the City. *Id.* Thus, to the extent Mr. Dear argued the records he received in the IPRA case provided a basis for relief from the judgment in the 2015 employment case, the state district court instructed him to pursue such relief in that case. *Id.*; (Doc. 77-2) at 2.

  C. *Ms. Nair's Role with the City*

Approximately three years after APD terminated Mr. Dear, Ms. Nair started working as the City's Chief Administrative Officer (CAO), serving as CAO from December 2017 to April 2022. *Id.* As CAO, Ms. Nair's duties included overseeing 22 different departments, comprised of approximately 6,000 employees, and managing a budget of approximately $1.2 billion. *Id.* at 7.

While CAO, Ms. Nair had a law license, but she was not responsible for providing legal advice or representation.[4] *Id.* Ms. Nair, never having been a litigator, worked for some time as a transactional attorney, and for the last seven years, she served exclusively as an administrator rather than a lawyer. *Id.* She does not have expertise or experience in First Amendment law generally, the standard for malicious abuse of process, or how the two interact. *Id.*

As it relates to the counterclaim against Mr. Dear, Ms. Nair relied on the combined advice of three attorneys: Samantha Hults, Jonlyn Martinez, and Melissa Kountz. *Id.* at 8. These attorneys have decades of combined experience, and their expertise includes representing governmental entities, managing day-to-day operations of the City's legal department, and handling constitutional tort claims under Section 1983. *Id.* Because of her experience working with these attorneys, Ms. Nair believed they would provide recommendations after closely scrutinizing the relevant facts and law. *Id.*

D.   *Mr. Dear's Complaint (Doc. 1-2)*

Approximately seven months after the City responded to Mr. Dear's 2020 IPRA case by filing a counterclaim, Mr. Dear filed a complaint against Ms. Nair, Mayor Tim Keller, and the City. *See* (Doc. 1-2). Defendant's Motion pertains to Count I, which alleges a First Amendment violation. Count I is the only remaining count in this lawsuit. *See* (Docs. 18, 80).

In Count I, Mr. Dear alleges Ms. Nair retaliated against him in response to his filing of a "lawful IPRA action" when she "caused a counterclaim to be filed…against [him]." (Doc. 1-2) at ¶¶ 8, 16. Mr. Dear further alleges that the purpose of the counterclaim was to "discourage him

---

[4] The Court notes that Mr. Dear disputes the implication that Ms. Nair did not provide advice and direct specific aspects of the City's litigation but otherwise appears to concede Ms. Nair was not responsible for providing legal advice or representation to the City. (Doc. 121) at 5 (citing (Doc. 121-3) at ¶¶ 5–9).

4

from accessing public documents and deter any future requests for public documents, as well as chill him from speaking publicly about the City's conduct." *Id*. at ¶ 16. He asserts he is entitled to damages, attorneys fees, and costs. *Id.* at ¶ 18. Initially. Mr. Dear's claim to damages appeared to be based on emotional distress damages, but he has since abandoned this claim. *Compare id.* at ¶ 27 *with* (Doc. 91). Mr. Dear further asserts he is entitled to punitive damages because Ms. Nair's actions were malicious, willful, and wanton. *Id.* at ¶ 19.

II.     Legal Standards

Summary judgment motions based on qualified immunity are treated differently from other judgment motions. *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). After a defendant raises a qualified immunity defense, a heavy two-part burden shifts to the plaintiff. *Id.* First, the plaintiff must establish that the defendant's actions violated a constitutional or statutory right. *Id.* If the plaintiff satisfies the first part, they must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* Whether the right was clearly established depends on "the objective legal reasonableness of the action at the time of the alleged violation and asks whether the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.*

If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Id.* If, however, the plaintiff satisfies both parts of the inquiry, "the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The parties must support factual allegations with evidence, and the Court is free to consider materials such as depositions, documents, and affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248–52.

In applying this standard, courts resolve all doubts against the movant, construe all admissible evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in favor of the nonmovant.  *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  An inference is unreasonable, though, "if it requires a degree of *speculation* and conjecture that renders [the factfinder's] findings *a guess or mere possibility*."  *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) (quoting *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017)).

Moreover, the nonmovant still bears the burden to produce real evidence.  He cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment.  *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp.*, 38 F.4th at 1200–01 (10th Cir. 2022).  A "plaintiff's version of the facts must find support in the record."  *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted).  "Unsubstantiated allegations carry no

probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

III.   *Discussion*

In her Renewed Motion for Summary Judgment, Ms. Nair again asks this Court to grant her qualified immunity because extraordinary circumstances exist due to her reliance on advice of counsel.[5]  (Doc. 118) at 11.  In the alternative, Ms. Nair requests the Court (1) limit Mr. Dear's available damages to nominal damages of $1.00, and (2) grant her summary judgment on punitive damages.  *Id.* at 15, 22.

A.   *The Extraordinary Circumstances Exception*

Where the defendant is alleged to have violated a clearly established right, a qualified immunity defense ordinarily fails.  *V–1 Oil v. State of Wyo., Dept. of Environmental Quality*, 902 F.2d 1482, 1488 (10th Cir. 1990) (citing *Harlow v. Fitzgerald*, 457 U.S. 818–19 (1982)).  An exception to this general rule is the existence of extraordinary circumstances.  *Id.* (citation omitted).  As the name suggests, this exception applies only in rare circumstances.  *Id.*  A defendant must demonstrate that circumstances were such that they were "prevented from knowing that [their] actions were unconstitutional."  *Id.* (internal quotations and citations omitted).  Only then will a defendant "not be imputed with the knowledge of an admittedly clearly established right."  *Id.* (citations omitted).  The extraordinary circumstance exception most often applies in reliance on advice of counsel defenses.  *Id.* (citation omitted).  However, "such reliance is not inherently extraordinary, for few things in government are more common than the receipt of legal advice."  *Id.*  (citations omitted).  It is the defendant's burden to prove

---

[5] In this Court's previous Memorandum Opinion and Order, (Doc. 80), it found that Ms. Nair could have violated Mr. Dear's clearly established constitutional right.

that the extraordinary circumstance exception applies. *Cannon v. City and Cnty. of Denver*, 998 F.2d 867, 874 (10th Cir. 1993) (citing *Harlow*, 457 U.S. 819; *V–1 Oil*, 902 F.2d at 1488).

The Tenth Circuit has identified four factors to help courts determine whether extraordinary circumstances exist. These factors, applied on a case-by-case basis, include: (1) "how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was," (2) whether the advising attorney(s) had complete information, (3) "the prominence and competence of the attorney(s)," and (4) how soon after the advice was received the disputed action was taken. *Id.* at 1489.

Ms. Nair argues that her reliance on advice of counsel establishes extraordinary circumstances, thereby entitling her to qualified immunity.[6] The Court disagrees. The record does not demonstrate that Ms. Nair was prevented from knowing her actions could have been unconstitutional. Thus, the extraordinary circumstances exception does not apply.

In this case, under the undisputed evidence, Ms. Nair has made a substantial, but not overwhelming, showing on the *V–1 Oil* factors. Ms. Nair argues the first factor weighs in her favor, asserting that "the City's attorneys['] recommendation that [she] approve the counterclaim was specific to Dear's case rather than generic legal advice." (Doc. 118) at 12. On the other hand, Ms. Nair has put forth no evidence indicating the attorneys' advice she relied on was unequivocal. Instead, she attempts to shift the burden to Mr. Dear to show that the advice was equivocal. *Id*. But proving an extraordinary circumstances defense is Ms. Nair's burden. *Cannon*, 998 F.2d at 874 (citing *Harlow*, 457 U.S. at 819; *V–1 Oil*, 902 F.2d at 1488).

---

[6] The Court notes that it denied Ms. Nair's previous request for qualified immunity based on her reliance on advice of counsel argument because she did not adequately address the *V–1 Oil* factors. *See* (Doc. 80). In her renewed summary judgment motion, Ms. Nair attempts to provide "a more complete summary judgment record for the Court to decide the advice-of-counsel issue." (Doc. 118) at 11.

The second and third factors weigh in Ms. Nair's favor. For the second factor, the parties appear to agree that she was given advice by prominent, competent attorneys. (Doc. 118) at 14; (Doc. 121) at 6 (admitting Defendant's Undisputed Material Fact No. 19). As to the third factor, it appears likely—and Mr. Dear does not dispute—that the advising attorneys had complete information related to filing the counterclaim against Mr. Dear. (Doc. 118) at 13.

For the fourth factor, Ms. Nair makes two arguments in asserting this factor weighs in her favor. *Id.* at 14. First, she claims it was her "normal practice…to decide whether to approve this type of recommendation when it was presented to her;" and second, the counterclaim against Mr. Dear was compulsory such that the City had to file it when it responded to his complaint. *Id.* The Court is unpersuaded. While perhaps it was Ms. Nair's normal practice to quickly approve or deny action related to City lawsuits, there is no indication that circumstances surrounding approving the counterclaim required her to make an immediate decision. Moreover, the City had thirty days after being served with Mr. Dear's complaint to file its answer and counterclaim. *See* Rule 1-012 NMRA ("A defendant shall serve his answer within thirty (30) days after the service of the summons and complaint upon him.").

Based on the record before it, the Court concludes Ms. Nair is not entitled to summary judgment under the extraordinary circumstances exception. *See Cannon*, 998 F.2d at 876 ("[A]s a general rule qualified immunity is a legal, not a factual, issue….Nevertheless, when a defendant relies on the extraordinary circumstances exception the issue may raise questions of fact." (internal quotation marks and citations omitted)). In this case, there remains a genuine question of material fact as to whether extraordinary circumstances existed.

### B.     Mr. Dear's Available Damages

Next, Ms. Nair argues this Court should (1) limit Mr. Dear's available damages at trial to nominal damages, and (2) grant her summary judgment on punitive damages. (Doc. 118) at 15–22. The Court will take each argument in turn.

#### 1.     Nominal Damages

In her Motion, Ms. Nair argues Mr. Dear should be limited to nominal damages because: (1) he cannot prove that Ms. Nair's approval of the counterclaim caused him to suffer actual injuries; and (2) he cannot recover damages based on APD terminating his employment. *Id.* While not altogether clear, in his Response, Mr. Dear appears to argue that he can pursue termination-related damages because he has "consistently maintained" the City filed the counterclaim in the underlying IPRA case to "cover up the fraud perpetrated upon the state district court in the termination case." *See* (Doc. 121) at 9–10. In Reply, Ms. Nair counters, arguing that Mr. Dear's termination-related damages are outside the scope of this case. (Doc. 114) at 7. The Court agrees with Ms. Nair. Mr. Dear has failed to point to any evidence of actual damages resulting from the counterclaim filed against him, and he cannot recover termination-related damages.

Section 1983 provides compensable damages for injuries caused by the deprivation of constitutional rights. *Makin v. Colorado Dep't of Corr.*, 183 F.3d 1205, 1214 (10th Cir. 1999) (citing *Carey v. Piphus*, 435 U.S. 247, 254 (1978)). Compensable damages must be based on actual injuries—not the abstract value of a constitutional right. *Id.* (citations omitted). In the absence of actual injuries, however, a plaintiff may still maintain their 1983 claim. *Carey*, 435 U.S. 266. This is because the law recognizes the importance that constitutional rights be

10

"scrupulously observed," while adhering to the principle that compensatory damages should only be awarded for actual injuries. *Id.*

Here, Ms. Nair argues that Mr. Dear provides no evidence that the filing of the counterclaim caused him actual harm. The undisputed facts show that City's outside litigation counsel filed a counterclaim against Mr. Dear in the underlying IPRA case on August 5, 2020. (Doc. 118) at 6; (Doc. 121) at 5. On April 29, 2021, the state district court granted Mr. Dear summary judgment on the malicious abuse of process claim. (Doc. 118) at 6; (Doc. 121) at 5. In total, the City's counterclaim loomed over Mr. Dear for less than nine months. Moreover, Ms. Nair points out that Mr. Dear voluntarily withdrew his claim for emotional distress damages. (Doc. 118) at 16. Mr. Dear does not argue otherwise. Instead, the only compensable damages he argues in his Response, are termination-related damages. (Doc. 121) at 9–11. But, as Ms. Nair notes, nowhere in his complaint does Mr. Dear indicate he is pursuing termination-related damages. (Doc. 114) at 7. Despite suggesting otherwise, Mr. Dear appears to contend that his loss of employment can be traced back to Ms. Nair approving the counterclaim against him. (Doc. 121) at 9–11. The Court agrees with Ms. Nair.

From the beginning, the Tenth Circuit and this Court have understood Mr. Dear's claim to be a First Amendment retaliation claim based on the City's counterclaim against him in the underlying IPRA suit. *Dear v. Nair*, 2022 WL 2165927, at *1 (10th Cir. 2022); (Docs. 18, 21, 37, 80). Mr. Dear therefore appears to be raising this claim for the first time in his Response. Despite this, the Court acknowledges that an issue raised for the first time on summary judgment may be treated as a motion to amend the complaint, pursuant to Federal Rule of Civil Procedure 15. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998) (citing *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991)). This does not, however, allow a

11

plaintiff to wait until the eleventh hour to refine his legal theories. *Evans*, 936 F.2d at 1091. Allowing such a late amendment would "waste the parties' resources, as well as judicial resources." *Id.*

Now, Mr. Dear raises this claim more than three and half years after this case was brought and only four months before trial. Because the deadline to amend pleadings passed almost two years ago, Mr. Dear must first show "good cause" under Federal Rule of Civil Procedure 16. *See* (Doc. 44). *See Navarro v. New Mexico Dep't of Pub. Safety*, 2018 WL 2770134, at *1 (D.N.M.) ("Where…a motion to amend a pleading is filed after the scheduling order deadline, a moving party must satisfy the good cause standard of Rule 16 before turning to Rule 15."). "This standard 'requires the moving party…provide an adequate explanation for any delay.'" *Id.* (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)). Mr. Dear makes not effort to contend good cause allows him to amend the scheduling order, and the Court similarly finds none.

Even if a strained reading of Mr. Dear's complaint could indicate his claim for termination-related damages, Ms. Nair argues that both the *Rooker-Feldman* doctrine and issue preclusion bar him from maintaining such a claim.[7] *See* (Docs. 118, 114). The Court agrees.

"The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction 'over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Bruce v. City and Cnty. of Denver*, 57 F.4th 738 (10th Cir. 2023) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Crop.*, 544 U.S. 280, 284 (2005)). This jurisdictional bar prevents district courts from exercising subject-matter jurisdiction over a claim

---

[7] Notably, Mr. Dear cites no authority suggesting otherwise.

when the following four factors exist: "(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment." *Id.* (citation omitted).

Here, Mr. Dear's newly alleged injuries arise from and are inseparable from the state court judgment. Mr. Dear does not dispute that in "August 2018, the state district court entered judgment…affirming Dear's termination." (Doc. 118) at 5 (citing (Doc. 64-4)); (Doc. 121) at 5 (admitting the same). His later unsuccessful attempts to have the courts reconsider the judgment culminated on May 19, 2020, when the New Mexico Supreme Court declined to grant certiorari. *Id.* Consequently, the state court judgment caused Mr. Dear's injuries—i.e., prevented him from recovering termination-related damages. And, termination-related damages are exactly what he is requesting in this case. *See* (Doc. 121) at 9. He is therefore asking this Court to review and reject the state court judgment, which it is barred from doing.[8] Thus, Mr. Dear cannot seek termination-related damages in this case.

Because Mr. Dear cannot show the City's counterclaim caused him to suffer an actual injury, and he is precluded from pursuing termination-related damages, the Court concludes only nominal damages are available to him at trial.

    2.    *Punitive Damages*

Ms. Nair then argues that Mr. Dear has failed to present evidence entitling him to punitive damages. (Doc. 118) at 20–21. In response, Mr. Dear claims that Mr. Geier has

---

[8] The Court notes that issue preclusion would also likely bar Mr. Dear from bringing a claim for termination-related damages. But because the Court has already concluded that two other independent grounds preclude Mr. Dear from recovering termination-related damages, it need not analyze another.

evidence of Ms. Nair's mental state such that a jury may find her culpable for punitive damages. (Doc. 121) at 11–12. The Court is unconvinced.

In a Section 1983 suit, a "jury may be permitted to assess punitive damages in an action" if the plaintiff shows that the defendant's conduct is "motivated by evil motive or intent, or when it involved a reckless or callous indifference to the federally protected rights of others." *Brown v. Flowers*, 2023 WL 6861761, at *6 (10th Cir.) (quoting *Eisenhour v. County*, 897 F.3d 1271, 1280 (10th Cir. 2018)). "[R]eckless or callous indifference' requires that the defendant have acted in the face of a perceived risk that [his] actions will violate federal law." *Id.* (internal quotation marks and citation omitted).

Mr. Dear has failed to raise a genuine issue of material fact about whether Ms. Nair had an evil motive or intent. The only evidence that Mr. Dear offers in support of an award of punitive damages is Mr. Geier's "recitation of the facts of Ms. Nair's mental state." (Doc. 121) at 10. This Court has read Mr. Geier's latest affidavit and finds no evidence of Ms. Nair's mental state.[9] *See* (Doc. 121-3). Mr. Dear has not carried his burden of providing evidence that Ms. Nair had an evil motive or intent or that her conduct involved reckless or callous indifference to his federally protect right to petition the court. The Court therefore concludes that he is not entitled to punitive damages.

C.   *Reconsideration of Previous Memorandum Opinion and Order, (Doc. 80)*

Finally, the Court addresses Ms. Nair's request to clarify this Court's previous Memorandum Opinion and Order, (Doc. 80). *See* (Doc. 118) at 15. In her Motion, Ms. Nair indicated that parts of this Court's earlier Memorandum Opinion and Order, (Doc. 80), could

---

[9] Because Mr. Dear provides no citation, the Court is left to guess that Mr. Dear intended to cite Mr. Geier's latest affidavit, (Doc. 121-3).

suggest the Court already concluded that Ms. Nair's approval of the request to file the counterclaim against Mr. Dear violated the First Amendment. *Id.* (citing Doc. 80). Ms. Nair's request is well-taken. The Court construes Ms. Nair's request for clarification as a motion to reconsider.

Under Federal Rule of Civil Procedure 54(b), courts may amend interlocutory orders at any time before entering a final judgment. The Tenth Circuit has indicated that a district court may apply the Rule 59(e) standards when reviewing a motion to reconsider under Rule 54(b). *Ankeney v. Zavaras*, 524 F. Appx 454, 458 (10th Cir. 2013). Under Rule 59(e), a court may grant a motion to reconsider when there is an intervening change in the controlling law, new evidence is available, or there is a need to correct clear error or prevent manifest injustice. *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941 (10th Cir. 1995).

Here, the Court is satisfied that there is a need to correct clear error and prevent manifest injustice. Thus, the Court will correct two misstatements. First, the heading on page five of (Doc. 80), should read: "Plaintiff's First Amendment rights [could have been] violated." Second, the sentence on page nine should read: "Having determined that Ms. Nair [could have violated] Mr. Dear's First Amendment right…." The Court will amend its previous order to reflect these two changes.

IV.  Conclusion

For the reasons discussed, the Court denies, in part, and grants, in part Defendant Ms. Nair's Renewed Motion for Summary Judgment. The Court orders the following:

- Defendant Ms. Nair's Amended Renewed Motion for Summary Judgment is denied. She is not entitled to qualified immunity based on her reliance on advice of counsel;

- Defendant Ms. Nair's request to limit Mr. Dear's available damages at trial to $1.00 is granted;

- Defendant Ms. Nair's request to grant summary judgment on Mr. Dear's punitive damages claim is granted.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE