IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY DEAR,

    Plaintiff,

v.                                                                                          Civ. No. 21-0250 KG/KK

SARITA NAIR, TIM KELLER,
and CITY OF ALBUQUERQUE,

    Defendants.

<u>AMENDED MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity and Memorandum in Support, (Doc. 64), and Plaintiff's Motion to Strike, (Doc. 76). Both Motions are fully and timely briefed. *See* (Docs. 68, 71, 77, 78). Having considered the briefing and the applicable law, the Court denies Plaintiff's Motion and grants, in part, and denies, in part, Defendants' Motion.

I.    *Background*

The facts giving rise to this suit stem from an Inspection of Public Records Act (IPRA) lawsuit. On November 18, 2019, Plaintiff Jeremy Dear, a former police officer with the Albuquerque Police Department, filed an IPRA request with the City of Albuquerque (City), "seeking records relating to Mr. Dear's alleged failure to follow an order to record citizen encounters and his alleged insubordination." (Doc. 1-2) at 2; *see* (Doc. 64) at 3, Undisputed Material Fact (UMF) 1; (Doc. 68) at 3, UMF 1. Three weeks later, the City denied his IPRA request, claiming the records were exempt from inspection because they were attorney work product. (Doc. 64) at 3, UMF 2; (Doc. 68) at 3, UMF 2. After receiving the City's denial, Mr. Dear contacted his attorney, Thomas Grover. (Doc. 1-2) at 2–3. Believing the City erred by

1

denying Mr. Dear's IPRA request, Mr. Grover initiated a lawsuit on Mr. Dear's behalf in New Mexico state court. *Id.* at 3; (Doc. 64) at 4, UMF 3; (Doc. 68) at 3, UMF 3.

In response to Mr. Dear's state-court complaint, the City filed a counterclaim, requesting monetary damages and alleging malicious abuse of process. (Doc. 1-2) at 3; (Doc. 64) at 4, UMF 4; (Doc. 68) at 3, UMF 4. Thereafter, the parties engaged in discovery and motions practice, litigating the viability of their claims for relief. *See, e.g.*, (Doc. 1-2) at 17–27 (City's discovery requests sent to Mr. Dear in the state court case); (Doc. 1-2) at 28–36 (City's Motion for Summary Judgment in state court case); (Doc. 11-3) (state-court docket sheet).

Deeming the City's state-court counterclaim and discovery requests "harassing" and "frivolous," Mr. Dear initiated the present lawsuit, alleging §1983 claims against Defendants Sarita Nair, Mayor Tim Keller, and the City for violating his First Amendment right to petition the government for redress. (Doc. 1-2) at 4–7. After removing the case to this Court, Defendants filed a Motion to Dismiss. (Doc. 3). The Court initially granted Defendants' Motion, but the Tenth Circuit reversed and remanded the case. On remand, Defendants renewed their Motion to Dismiss based on qualified immunity. (Doc. 33). The Court denied Defendants' renewed Motion, finding that at the time of the alleged First Amendment violation, the law was clearly established such that a governmental entity's decision to bring a civil malicious abuse of process claim could violate the First Amendment. (Doc. 37) (citing *Dear v. Nair*, 2022 WL 2165927, at *3–5 (10th Cir. 2022)).

Now, Defendants argue they are entitled to summary judgment because (1) Ms. Nair and Mayor Keller are entitled to qualified immunity; and (2) the City had no policy of filing counterclaims against individuals, and so neither it nor Mayor Keller can be liable for Ms. Nair's actions. (Doc. 64).

II.   *Legal Standards*

    A. *Summary Judgment*

Summary judgment motions based on qualified immunity are treated differently from other judgment motions. *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). After a defendant raises a qualified immunity defense, a heavy two-part burden shifts to the plaintiff. *Id.* First, the plaintiff must establish that the defendant's actions violated a constitutional or statutory right. *Id.* If the plaintiff satisfies the first part, they must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* Whether the right was clearly established depends on "the objective legal reasonableness of the action at the time of the alleged violation and asks whether the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.*

If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Id.* If, however, the plaintiff satisfies both parts of the inquiry, "the burden shifts to the defendant to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.*

The parties must support factual allegations with evidence, and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it

3

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–52.

In applying this standard, courts resolve all doubts against the movant, construe all admissible evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). An inference is unreasonable, though, "if it requires a degree of *speculation* and conjuncture that renders [the factfinder's] findings *a guess or mere possibility.*" *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) (quoting *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017)).

Moreover, the nonmovant still bears the burden to produce real evidence. They cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp.*, 38 F.4th at 1200–01 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

III.    *Discussion*

The Court concludes the following: (1) Ms. Nair is not entitled to qualified immunity, and (2) the City and Mayor Keller are not liable for Ms. Nair's decision to approve a

counterclaim against Mr. Dear.  The Court addresses the arguments relating to each Defendant in turn.

### A. *Defendant Nair*

Defendants argue that Defendant Nair is entitled to qualified immunity for three reasons.  First, Ms. Nair did not violate Mr. Dear's First Amendment right by authorizing the counterclaim. (Doc. 64) at 9.  Second, even if Ms. Nair violated Mr. Dear's First Amendment right by authorizing a counterclaim, the law was not clearly established at the time of the violation. *Id.* at 10.  Third, Plaintiff's reliance on counsel created an extraordinary circumstance that entitles her to qualified immunity. *Id.* at 12–13.

#### 1. *Plaintiff's First Amendment rights could have been violated*

As discussed above, in order to overcome a defense of qualified immunity, a plaintiff must show that (1) defendant's conduct violated plaintiff's constitutional rights; and (2) the right at issue was clearly established. *Ceballos*, 919 F.3d at 1212.  At issue here, is Mr. Dear's First Amendment retaliation claim.

A First Amendment retaliation claim requires proof of the following three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks and citation omitted).

Defendants have not demonstrated that Ms. Nair is entitled summary judgment on Plaintiff's First Amendment claim.  At the outset, Defendants do not dispute that Plaintiff's IPRA complaint against the City is protected First Amendment activity.  Plaintiff therefore

satisfies the first element of his First Amendment retaliation claim. Instead, Defendants ostensibly argue that Ms. Nair could not have violated Plaintiff's First Amendment right for two reasons. First, Mr. Dear did not drop his IPRA complaint against the City after Ms. Nair authorized the counterclaim against him. (Doc. 64) at 9. Second, "the timing of the counterclaim cannot be considered suspicious" because counterclaims are compulsory under both the Federal Rules of Civil Procedure and the New Mexico Rules of Civil Procedure. *Id.* Both arguments are unavailing.

Regarding the second element of Plaintiff's First Amendment retaliation claim, Defendants essentially argue this Court should apply a subjective standard to determine whether Defendants' counterclaim caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. *See* (Doc. 64) at 9 ("Filing a counterclaim did not chill the Plaintiff from exercising and enforcing his statutory rights because by the time the Defendant filed its counterclaim, Plaintiffs had already initiated a lawsuit."). The Tenth Circuit, however, has held that the "standard for evaluating that chilling effect on speech is objective, rather than subjective." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

In *Shero*, the Tenth Circuit held that a government suit seeking declaratory judgment does not give rise to a First Amendment retaliation claim. *Id.* at 1204. This is because "[t]he nature and purpose of a declaratory judgment is to declare rights, not to attack the opposing party." *Id.* In keeping with *Shero* and the Tenth Circuit's remand order, this Court's earlier opinion acknowledged that "[b]eing exposed to claims for monetary damages would chill a person of ordinary firmness from exercising their right to petition the government." *Dear v. Nair*, 2022 WL 9345955, at *2 (D.N.M.) (citing *Dear v. Nair*, 2022 WL 2165927, at *4–5 (10th

6

Cir. 2022) (stating "a retaliatory civil tort claim could give rise to § 1983 liability.") Thus, because the counterclaim at issue in this case sought compensatory and punitive damages, this Court again concludes that the City's counterclaim against Mr. Dear would chill a person of ordinary firmness from exercising their constitutional right to petition the government.

Defendants' next argument is unclear. Defendants assert that "the timing of the counterclaim cannot be considered suspicious" because counterclaims are compulsory under federal and state rules. Presumably, this argument addresses the motivation for filing a counterclaim—the third element. To the extent that Defendants argue that filing a counterclaim was not substantially motivated as a response to Mr. Dear's IPRA complaint, the Court concludes that a reasonable jury could find otherwise. Drawing all reasonable inferences in favor of Mr. Dear, the Court determines that a reasonable jury could find that filling a counterclaim for monetary damages against Mr. Dear was substantially motivated by his IPRA lawsuit. Indeed, in Defendants' state-court answer and counterclaim, they requested damages caused by Mr. Dear because "Counter-Defendant Dear brought suit against Counter-Plaintiff City of Albuquerque for the purpose of harming the Counter-Plaintiff and attempting to obtain remuneration under false pretenses." (Doc. 64-1) at 4.

2. *Plaintiff's First Amendment rights were clearly established*

Defendants' argument that Plaintiff's First Amendment rights were not clearly established fails. Defendants argue that there is no Supreme Court or Tenth Circuit authority indicating that filing a counterclaim against Mr. Dear could violate his First Amendment right. (Doc. 64) at 10–11. However, this Court's earlier order concluded that Mr. Dear's First Amendment right to petition the government was clearly established at the time of the alleged violation. *Dear*, 2022 WL 9345955, at *2. In so concluding, the Court noted the Tenth Circuit's

remand order, which held that a governmental entity could violate a Plaintiff's First Amendment right by bringing a civil malicious abuse of process claim. *Id.*

### 3. *Defendants' reliance-on-counsel argument is unavailing*

Finally, Defendants argue that Ms. Nair is entitled to qualified immunity because she relied on advice of counsel in approving the counterclaim against Mr. Dear. (Doc. 64) at 12–13. Defendants rely on a Tenth Circuit case in support of their argument but fail to include any of the enumerated factors the Court discussed in that case. (Doc. 64) at 12 (citing *V-1 Oil Co. v. State of Wyo., Dep't of Env't Quality*, 902 F.2d 1482 (10th Cir. 1990)). These factors include: (1) "how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was," (2) "whether complete information had been provided to the advising attorney(s)," (3) "the prominence and competence of the attorney(s)," and (4) "how soon after the advice was received the disputed action was taken." *V-1 Oil Co.* 902 F.2d at 1489. Defendants do not address the *V-1 Oil* factors or otherwise analogize the facts in *V-1 Oil* to the facts here.

In *V-1 Oil*, the Tenth Circuit determined that a Wyoming state official was entitled to qualified immunity based on his reliance on counsel. *Id.* In that case, the official's reliance on counsel contributed to extraordinary circumstances preventing him from knowing the relevant legal standard. *Id.* The Tenth Circuit explained that

> [a]n officer who conducts a warrantless search on the same day he was advised by fully informed, high-ranking government attorneys that a particular statute, which had not yet been tested in any court, lawfully authorized that particular search—should not be expected to have known that the search was unconstitutional.

*Id.* In contrast, Defendants in this case focus only on the fact that "Defendant Nair "relied on the advice of her counsel and is therefore, entitled to qualified immunity." (Doc. 64) at 13.

Defendants are understandably frustrated with Mr. Dear's seemingly incessant lawsuits relating to his 2015 termination. Indeed, it would appear that the underlying IPRA lawsuit at issue in this case was an attempt—at least in part—to collaterally attack previously decided state court employment litigation. *See* (Doc. 77-2) at ¶ 4, (denying Mr. Dear's employment related damages because the damages were at issue in Plaintiff's already litigated 2015 employment litigation case with the City of Albuquerque).[1] Moreover, the documents the City was required to produced in the underlying IPRA lawsuit were already included in the record in Mr. Dear's previous lawsuit. (Doc. 77-5). The Court empathizes with Defendants' desire to curb such lawsuits. Nonetheless, without having the benefit of a persuasive argument applying the *V-1 Oil* factors, the Court concludes that Ms. Nair's reliance-on-counsel argument does not establish extraordinary circumstances exist here. Thus, Defendants' argument fails; Ms. Nair is not entitled to qualified immunity.

Having determined that Ms. Nair could have violated violated Mr. Dear's First Amendment right, which was clearly established at the time Ms. Nair authorized the counterclaim, the burden shifts to Defendant Nair to show that there are no genuine issues of material fact, and that she is entitled to judgment as a matter of law. Defendant Nair has not done so, she is therefore not entitled to summary judgment.

B. *Municipal Liability*

The Supreme Court has made clear that a municipality cannot be held liable under a § 1983 claim based on a respondeat superior theory. *Waller v. City and Cnty. of Denver*, 932

---

[1] The Court takes judicial notice of the state court's Final Order Regarding Judgment (Doc. 77-2) for *Dear v. City of Albuquerque*, D-202-CV-2020-04023, Second Judicial District Court, Bernalillo County. *See Binford v. United States*, 436 F.3d 1252, 1256 n. 7 (10th Cir. 2006) (acknowledging district "court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record").

F.3d 1277, 1283 (10th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978)). Instead, in a § 1983 suit, a plaintiff must show that a municipality had policy or custom that caused the alleged injury. *Id.* at 1284 (citation omitted). In the Tenth Circuit, a municipal policy or custom can take several forms:

> (1) A formal regulation or policy statement; (2) an informal custom amounting to widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* at 1283 (citation omitted). "After establishing a municipal policy or custom, a plaintiff must demonstrate a direct causal link between the policy or custom and the injury alleged." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff does not clearly articulate his theory of municipal liability. As far as the Court can tell, Plaintiff bases his municipal liability claim on a single conclusory statement, asserting that "it is clear from [the email exchange] almost to the point that there is no question of fact that the city had a policy, that municipal liability is clearly established under *City of Canton v. Harris*." (Doc. 68) at 8. Plaintiff's theory of municipal liability appears to rely entirely on a purported email exchange between City attorneys and select City staff.[2] (Doc. 68) at 7–8. Plaintiff also cites *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), although he provides no analysis of how it applies to this case. *See* (Doc. 68) at 6–7. Nonetheless, cobbling

---

[2] The Court notes that Defendants claim this email exchange is protected by attorney-client privilege. While the email appears to be protected by attorney-client privilege, the Court need not address the question of privilege here. Ms. Nair admitted approving legal counsel's request to file a counterclaim against Mr. Dear in response to his IPRA lawsuit. *See* (Doc. 64-7) at ¶¶ 6–8.

10

together Plaintiff's argument in the light most favorable to him, Plaintiff appears to argue the City is liable under the third form of municipal liability described above. Namely, Ms. Nair had final policymaking authority such that approving a counterclaim against Mr. Dear established municipal liability.[3] Under this form of municipal liability, Plaintiff must show that (1) Ms. Nair approved the counterclaim against him; and (2) she was the final policymaker. *See Waller*, 932 F.3d at 1283. Here, there is no question that Ms. Nair approved legal counsel's request to file a counterclaim against Mr. Dear based on his IPRA lawsuit. *See* Declaration of Sarita Nair, (Doc. 64-7). The Court therefore need only consider whether she was the final policymaker.

"The inquiry of whether a government employee is a policymaking official is a question of state law." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010) (citing *Praprotnik*, 485 U.S. 112, 124 (1988)). Courts look to the government employee's legal power to determine whether they are a final policymaker. *Id.* (citations omitted). The Tenth Circuit has provided three factors for courts to consider when deciding if an individual's legal power makes them a final policymaker for a municipality: "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision[s] are final—*i.e.*, are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Id.* (citing *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995)).

Mr. Dear provides no indication that any of these factors weigh in his favor and points to no evidence suggesting Ms. Nair had final policymaking authority with respect the City's legal

---

[3] Plaintiff provides no argument that suggests the emails he cites was evidence of any other form of municipal liability—e.g., either (1) a formal policy or (2) an informal custom amounting to a widespread practice of the City filing counterclaims against citizens who brought IPRA lawsuits. The Court will not make Plaintiff's argument for him and therefore does not consider these other forms of municipal liability.

decisions. Instead, he provides a conclusory statement that Ms. Nair "authorized a written policy for the City Legal Department that authorized the filing of the retaliatory claim." (Doc. 68) at 3. Looking to the City's ordinances, however, it appears that the City's Risk Management Claims Review Board has final policymaking authority with respect to the City's legal decisions. Specifically, the City of Albuquerque, New Mexico Code of Ordinances states "[t]he Risk Management Claims Review Board shall review and approve or disapprove the handling, payment and disposition of claims in accordance with the *Risk Management Manual* approved by the Chief Administrative Officer of the city." *See* Albuquerque, N.M., Code of Ordinances § 2-8-2-6(C)). Thus, while Ms. Nair presumably approved the *Risk Management Manual*, this fact alone does not make her the final policymaker with respect to the City's handling of legal claims. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.").

      Mr. Dear does not point to any evidence suggesting that any of the three factors the Tenth Circuit articulated in *Brammer-Hoelter* weigh in his favor.[4] Absent such evidence, Mr. Dear has not established that a reasonable jury could find that the City had a policy of filing counterclaims against him. The Court therefore concludes that the City cannot be subject to liability for the counterclaims filed against Mr. Dear.

---

[4] Notably, it is unclear to what extent Plaintiff contends that Ms. Nair was the final policymaker. In his complaint, he alleges that "Defendants City of Albuquerque and Mayor Tim Kelly are authorized policymakers and responsible for creating, and adhering to, policies, procedures and customs for the City." (Doc. 1-2) at ¶ 21. He does not allege the same for Ms. Nair in either his complaint or his motion. *See generally* (Docs. 1-2; 68).

C. *Plaintiff Fails to Establish Supervisory Liability*

As with municipal liability, a plaintiff's § 1983 claim against a defendant-supervisor for the unconstitutional conduct of their subordinates cannot be based on a theory of respondeat superior. *Dodds*, 614 F.3d at 1197 (citation omitted). Instead, a plaintiff may establish defendant-supervisory liability "by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged connotational deprivation." *Id.* (citing *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2022)).

As mentioned above, the Court concludes there is no City policy. Again, the only evidence Plaintiff points to in support of a City policy is a purported email exchange. (Doc. 68) at 8. Plaintiff does not explain how this exchange amounts to a policy. Without a policy, the Court need not consider the remaining two factors.

The Court next turns to Plaintiff's argument that Mayor Keller must affirmatively establish that he did not authorize or approve the policy giving rise to the counterclaim, even if he did not approve the specific counterclaim at issue. (Doc. 68) at 8. Plaintiff's argument is misguided. Plaintiff appears to confuse the motion to dismiss and the summary judgment standards. While the Court previously took the facts Plaintiff alleged in his complaint as true, the same is not the case for a motion for summary judgment. He has the burden to produce real evidence. Because Mr. Dear lacks evidence of policy, let alone Mayor Keller's authorization or approval of the alleged policy, he has not satisfied his burden. *See Plustwik v. Voss of Norway ASA*, 2013 WL 1945082, at *1 (D. Utah) ("If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving

party is entitled to summary judgment as a matter of law."). Consequently, the Court determines that no reasonable jury could find Mayor Keller liable.

### D. *Plaintiff's Motion to Strike*

On January 22, 2024, Plaintiff filed a Motion to Strike requesting the Court strike Defendants' Motion for Summary Judgment. (Doc. 76) at 1. Plaintiff argues that Mayor Keller's recent deposition testimony reveals that the declaration[5] he presented as part of Defendants' summary judgment motion was made in bad faith.[6] (Doc. 76) at 5–6. Plaintiff argues that Defendant Keller's Declaration does not reflect his personal knowledge, but instead that "he merely signed what his attorney put in front of him with zero actual verification of veracity or contents of the [declaration]." (Doc. 76) at 5–6. The Court is unconvinced.

As Plaintiff notes, "[t]here is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Sappington v. Rogers Cnty. Bd. of Cnty. Comm'rs*, 2020 WL 6785101, at *6 (N.D. Okla.) (quoting *Burns v. Bd. Of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1281 (10th Cir. 2003); (citing *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985) (holding that "[a]n inconsistent affidavit may preclude summary judgment … if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony").

---

[5] Throughout Plaintiff's Motion, he refers to Mayor Keller's Declaration as his "affidavit". For the sake of accuracy, the Court treats Plaintiff's reference to Mayor Keller's "affidavit" to be Mayor Keller's Declaration.
[6] The Court notes that Mayor Keller's recent deposition testimony was given in a separate, state court case. *See* (Doc. 76-1).

Here, Plaintiff does not indicate what portion of Mayor Keller's Declaration he claims conflicts with his deposition.[7] In the deposition transcript, Mayor Keller was asked, generally, why he signed the declaration. (Doc. 76-1) at 2. He responded that he didn't know why he signed it, but that he read it and agreed with what was written. *Id.* He further explained that he didn't know what "the [*Dear*] case was about." *Id.* When asked if he had any idea what the issues in this case are, he answered "I don't." *Id.* He answered essentially the same when asked if he knew of Jeremy Dear. *Id.* Counsel then asked him about the counterclaims at issue in this case. He answered that he didn't know anything about them, and that he didn't know if the City filed a counterclaim against Mr. Dear. *Id.*

After reviewing the deposition testimony and Mayor Keller's Declaration, the Court finds no inconsistency, let alone bad faith. In his declaration, Mayor Keller indicates he was not involved in the counterclaims at issue in this case. *See* (Doc. 64-6) at ¶¶ 6–10. The Court reads his deposition testimony in line with his declaration. For example, the Court finds Mayor Keller's testimony that he does not know what this case is about is consistent with not knowing anything about the counterclaims at issue in this case. Thus, the Court does not find Mayor Keller's deposition testimony includes statements that conflict with his prior declaration, or that his declaration was submitted in bad faith.

E. *Plaintiff's Rule 56(d) Affidavit*

As part of his response to Defendants' summary judgment motion, Plaintiff attaches his attorney's Rule 56(d) affidavit (Mr. Dunn's Affidavit). Mr. Dunn's Affidavit states that "Mayor

---

[7] The Court notes that Plaintiff did not attach the Exhibit 25 referenced in Mayor Keller's deposition testimony. Nonetheless, Defendants appear to agree that the declaration referenced in the deposition is the same as the Declaration of Mayor Tim Keller in this case. *See* (Doc. 77) at 5. The Court will therefore treat the referenced Exhibit 25 as referring to his declaration in this case.

Keller retains information that can only reasonably be extracted through deposition." (Doc. 68-3) at ¶ 6. This information relates to "the authority structure of the City of Albuquerque" and the "inconsistency of his [declaration] statement when viewed against the sworn testimony of former chief Mike Geier regarding the pattern and practice of the Mayor Keller's involvement and sign off of litigation involving APD." *Id.* at ¶ 8.

Rule 56(d) allows a non-moving party, in response to a summary judgment motion, to request additional discovery by showing via affidavit or declaration that absent additional discovery "it cannot present facts essential to justify its opposition to the motion. *Gutierrez v. Cobos*, 841 F.3d 895, 907–08 (10th Cir. 2016). In these cases, courts have discretion to: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.* at 908. In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] the obtain those facts and rebut the motion for summary judgment." *Id.* (citing *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)). Rule 56(d), however, "is not a license for a fishing expedition." *Lewis v. Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990)

First, regarding information relating to the City's authority structure, Plaintiff has not (1) identified with specificity what insights into the City's authority structure he expects to hear from Mayor Keller or (2) indicated he has acted with diligence in obtaining these facts. To be sure, Mr. Dunn's Affidavit indicates that Plaintiff previously sought dates to take Mayor Keller's deposition, and that Defendants, instead of providing these dates, filed the instant motion. (Doc. 68-3) at ¶ 3. However, a single email requesting the Mayor Keller's deposition is hardly

sufficient to demonstrate Plaintiff's diligence in obtaining information about the City's authority structure. Presumably there are at least a handful of individuals and documents that provide information related to the City's authority structure. Moreover, Mr. Dunn does not indicate how facts regarding the City's authority structure would allow him to rebut Defendants' summary judgment motion.

Second, regarding Tim Keller's involvement in the litigation the City is involved in, Mr. Dunn relies on former Albuquerque Police Department Chief Mike Geier's affidavit. *See* (Docs. 68-3; 68-4). Plaintiff's request, however, appears to be moot. In Plaintiff's later-filed Motion to Strike discussed above, he cites to Mayor Keller's deposition testimony on this topic. *See* (Doc. 76). Additionally, it is not clear that Mr. Dunn's characterization of Mr. Geier's affidavit is accurate. Mr. Dunn suggests that Mr. Geier's affidavit stands for the fact that Mayor Keller has a "pattern and practice" of being involved in and "signing off" on litigation involving APD. (Doc. 68-3) at ¶ 8. The Court has a different read.

Mr. Geier's affidavit includes only one ambiguous sentence about Mayor Keller stating: "It is also inconsistent with my understanding of the communications and involvement of Mayor Keller with affairs of APD including litigation via Ms. Nair." (Doc. 68-2) at ¶ 4. In the context of the previous sentence, Mr. Geier appears to be stating that "Any statement that Sarita Nair is not directing the litigation involving and against Mr. Dear ... is also inconsistent with [his] understanding of the communications and involvement of Mayor Keller with affairs of APD including litigation via Ms. Nair." *See id.* Read this way, the statement appears to undermine Mr. Dunn's characterization of Mr. Geier's statement. If Mr. Geier intended to state something different, it is not clear to this Court. Moreover, even if the Court were to adopt Mr. Dunn's reading, nothing in Mr. Geier's affidavit states—much less implies—that Mayor Keller "signed

off" on the counterclaim against Mr. Dear. *See* (Doc. 68-3). Mr. Geier's affidavit appears to be specifically limited to APD litigation, not IPRA litigation. Thus, the Court concludes that Mr. Dunn's Affidavit does not satisfy the Rule 56(d) factors that warrant additional discovery before ruling on Defendants' Motion.

IV. *Conclusion*

For the reasons discussed, this Court orders the following:

- Defendant Nair's Motion for Summary Judgment based on Qualified Immunity is denied.

- Defendant Mayor Tim Keller and Defendant City of Albuquerque's Motion for Summary Judgment is granted.

- Plaintiff's Motion to Strike is denied.

- Plaintiff's Rule 56(d) Motion is denied.

IT IS SO ORDERED.

_____
CHIEF UNITED STATES DISTRICT JUDGE